*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DOUGLAS, Minors.

UNPUBLISHED
August 18, 2022

No. 359684
Ogemaw Circuit Court
Family Division
LC No. 19-016477-NA

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to TD and BD under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist).[1] Respondent-mother argues that the trial court erred by finding that statutory grounds for termination had been established and that termination of her parental rights was in the children's best interests. We affirm.

## I. BACKGROUND

In October 2019, the Department of Health and Human Services (DHHS) petitioned to remove TD and BD from their parents' care.[2] The petition alleged that respondent-mother had a severe drug addiction that prevented her from parenting her children, was noncompliant with her medication to treat mental health issues, and was incarcerated on a felony probation violation. The trial court authorized the petition. Soon after, respondent-mother entered a plea to jurisdiction, admitting to allegations in the petition about her substance use, mental health challenges, and incarceration. The court accepted the plea and found that there were statutory grounds to exercise jurisdiction over the children under MCL 712A.2(b)(2), due to an unfit home environment because

---

[1] As will be discussed below, the trial court also cited an outdated statutory ground as an additional basis for termination.

[2] The children's father was also a party to these child protective proceedings, but he is not a party to this appeal.

-1-

of neglect, drunkenness, criminality, or depravity. Respondent-mother was released from jail in December 2019.

Throughout the first half of 2020, respondent-mother made significant strides. For nearly seven months, respondent-mother participated in inpatient substance abuse treatment, had no positive drug screens, and progressed in her case service plan. But against the advice of her counselor, respondent-mother voluntarily left the inpatient center at the end of July 2020 without completing the treatment program. Almost immediately, respondent-mother relapsed in her addiction, and she tested positive on every drug screen taken between August 2020 and April 2021. Respondent-mother was incarcerated again at the end of April 2021 for a probation violation related to her drug use.

On June 2, 2021, DHHS filed a supplemental petition seeking to terminate respondent-mother's parental rights to TD and BD. The petition requested termination under MCL 712A.19b(3)(c)(*i*); (c)(*ii*) (failure to rectify other conditions); (g) (failure to provide proper care and custody); and (j) (reasonable likelihood of harm if returned to parent).[3] The petition alleged that despite the services provided to respondent-mother by DHHS, the conditions that led to adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable period of time given the children's ages. In support of its termination petition, DHHS highlighted that respondent-mother had been incarcerated when the case began and was again incarcerated in a county jail. The petition also stated that respondent-mother left her inpatient substance abuse treatment program against the advice of her therapist in July 2020 and had since struggled with her substance abuse. Respondent-mother also had not fully participated in mental health services and had been discharged for failure to attend her appointments. Finally, the petition stated that termination of respondent-mother's parental rights was in her children's best interests because they had been in care for nearly two years with little progress made by respondent-mother, and the children needed stability and permanency in their lives.

At a termination hearing in September 2021, the court heard testimony from the foster care caseworker, Delora O'Neill, and from respondent-mother. O'Neill testified that after respondent-mother left the inpatient substance abuse treatment center, she was referred to additional substance abuse treatment options, but there were significant lapses in her participation, and she consistently tested positive for substance use. Respondent-mother's participation in mental health treatment had also been sporadic. According to O'Neill, respondent-mother had made some progress in

---

[3] The petition included the language from the outdated version of MCL 712A.19b(3)(g): "The parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." (Emphasis added.) The statute was amended effective June 12, 2018 by 2018 PA 58 and now reads: "The parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." (Emphasis added.) The trial court erroneously incorporated this outdated provision into its opinion terminating respondent-mother's parental rights.

parent-child interaction therapy, but respondent-mother still struggled to redirect the children. O'Neill also believed that the children had an attachment, but not a bond, with respondent-mother, because the children did not look to her for their needs. Respondent-mother testified that she left the inpatient treatment program because she grew helpless by the fact that she still did not have custody of her children. She also admitted that she subsequently failed to keep up with her participation in substance abuse and mental health services. Respondent-mother stated that she loves her children very much and believed that she could comply with her case service plan in order to regain custody of her children.

In November 2021, the trial court issued an opinion terminating respondent-mother's parental rights, in part, under MCL 712A.19b(3)(c)(*i*) because the conditions that led to adjudication continued to exist. The court recognized that it obtained jurisdiction in this case because of respondent-mother's substance abuse, mental health issues, and inability to stay out of jail. The court found that respondent-mother "has short periods of cooperation and progress, but cannot seem to complete substance abuse treatment and refrain from the use of drugs and the incarceration that comes as a result of that use." The court also noted that respondent-mother had not fully participated in mental health services. The court found that terminating respondent-mother's parental rights was in TD and BD's best interests because they needed permanence in their lives and could obtain that through adoption. This appeal followed.

## II. STANDARDS OF REVIEW

We review a trial court's factual findings underlying its decision to terminate parental rights for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We also review a trial court's best-interests determination for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Mason*, 486 Mich at 152 (quotation marks and citation omitted).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother first argues that the trial court erred by finding that statutory grounds for termination had been established.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). If at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). In this case, the trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), and as previously noted, erroneously cited an outdated statutory ground. Therefore, the only viable statutory ground to support termination of respondent-mother's parental rights was MCL 712A.19b(3)(c)(*i*).

MCL 712A.19b(3)(c)(*i*) authorizes termination when:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground is met when "the totality of the evidence amply supports that [the respondent] ha[s] not accomplished any meaningful change in the conditions" that led to the adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). "[I]ncarceration alone does not constitute grounds for termination." *Mason*, 486 Mich at 146.

It is undisputed that 182 or more days passed between the initial dispositional order and the trial court's order terminating respondent-mother's parental rights. The core of respondent-mother's argument, therefore, focuses on whether there was clear and convincing evidence that the conditions leading to adjudication continued to exist, and if so, whether there was a reasonable likelihood that the conditions would be rectified within a reasonable time considering TD's and BD's ages. Respondent-mother contends that she had previously made significant progress in addressing her substance abuse and mental health problems, and therefore she showed that she could rectify these issues within a reasonable amount of time.

The conditions that led to adjudication in respondent-mother's case were her substance use addiction, mental health challenges, and incarceration, which together left respondent-mother unable to effectively parent her children. At respondent-mother's plea to jurisdiction in November 2019, she admitted to multiple positive drug screens, to noncompliance with her prescribed medication for anxiety and depression, and to her then-current incarceration.

At the time of termination, clear and convincing evidence showed that the conditions that led to adjudication continued to exist in respondent-mother's life. With respect to substance abuse, respondent-mother continued to struggle with her addiction. Despite making substantial and admirable progress throughout her time at an inpatient treatment center, respondent-mother made the unfortunate choice to voluntarily leave before completing her treatment and against the advice of her counselor. Subsequently, respondent-mother relapsed, testing positive on all 35 drug screens taken between August 2020 and April 2021. Respondent-mother was unable to consistently reengage with substance abuse treatment services after leaving inpatient treatment. Respondent-mother had also been incarcerated for a probation violation when this case began in October 2019 and was incarcerated again in April 2021. These multiple stints of incarceration made it more difficult for respondent-mother to participate in and benefit from the services she needed to regain custody of her children.

Similarly, respondent-mother had not addressed her mental health challenges throughout the pendency of these proceedings. She did not fully participate in mental health counseling services, including when she was not incarcerated. The evidence showed that respondent-mother missed several appointments and did not respond to communications from her case manager, leading the community mental health agency to close her case. This sporadic participation impacted her ability to parent and reunify with TD and BD. In sum, the trial court did not clearly

-4-

err by finding clear and convincing evidence that respondent-mother's conditions that led the trial court to exercise jurisdiction continued to exist nearly two years later.

The trial court also properly found that there was no reasonable likelihood that these conditions would be rectified within a reasonable time period given the ages of TD and BD. At the time of the trial court's termination order, approximately 27 months had passed since TD and BD had been removed from their parents' custody and placed into the care and supervision of DHHS, and little had changed from beginning to end. TD and BD were six and three years old, respectively, at the time of the termination order, and incredibly long shares of their lives had been spent in foster care. The trial court had ample evidence of repeated setbacks and struggles over a two-year period to conclude that it was not reasonably likely that respondent-mother would rectify her substance abuse and mental health challenges in a reasonable amount of time in order to provide her young children with the stability they needed. Accordingly, the trial court did not clearly err by finding that respondent-mother was unlikely to make necessary progress in these areas of her life within a reasonable period of time.

Overall, the evidence supported the trial court's finding that the statutory ground for termination under MCL 712A.19b(3)(c)(*i*) had been met by clear and convincing evidence. Because at least one statutory ground supporting termination was established, any error in the trial court's finding of additional statutory grounds was harmless and need not be addressed. See *Foster*, 285 Mich App at 633.

## IV. BEST INTERESTS

Respondent-mother also argues that the trial court erred by finding that termination of her parental rights was in her children's best interests.

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The focus of the best-interest determination is on the children, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The trial court may consider a range of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other relevant factors are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In this case, the trial court found that terminating respondent-mother's parental rights was in the children's best interests. Discussing the length of time that the children had spent in foster care, the court explained:

> [TD and BD] should not be required to wait longer to obtain permanence in their lives. The Court believes that [TD] and [BD] are very adoptable and should be able to obtain permanence in their lives relatively quickly, hopefully remaining together as siblings in an adoptive home. The children are currently in a non-relative foster

care placement and it appears that there is no relative placement available and adoption would be in the best interests of the children.

Respondent-mother's challenge to the trial court's best-interests determination is largely intertwined into her argument about the statutory grounds for termination. In any event, the record evidence supported the trial court's finding that termination of respondent-mother's parental rights was in her children's best interests. Several considerations, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home" all supported this determination. *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court appropriately focused on the need for stability and permanence in TD's and BD's lives. These child protective proceedings had gone on for over two years—nearly half of TD's life and two-thirds of BD's life—and the children deserved permanence at such a young age. The instability in their lives was caused in large part by respondent-mother's actions, and as the trial court noted, respondent-mother's setbacks hindered the children's opportunity to have "a childhood with loving and caring parents that they [could] depend on to be there for them."

The trial court found that adoption offered this opportunity and that terminating respondent-mother's parental rights was therefore in the children's best interests. This finding was well-supported by the evidence. At the time of the termination order, TD and BD had been living together in a nonrelative foster care placement for about 18 months, and this foster home was a potential home for adoption. There was also evidence that TD and BD lacked a bond with respondent-mother because the children looked to their foster parent, rather than respondent-mother, to provide for their needs. Any attachment that the children shared with respondent-mother was further interrupted for months at a time by her stays of incarceration. Considering all of these factors, the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Kristina Robinson Garrett

-6-